UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

TRUSTEES OF THE NORTHEAST
CARPENTERS HEALTH, PENSION, ANNUITY,
APPRENTICESHIP, AND LABOR
MANAGEMENT COOPERATION FUNDS,

**MEMORANDUM & ORDER**
19-CV-326 (MKB)

Petitioners,

v.

UPSTATE INTERIORS, LLC,

Respondent.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Petitioners Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds filed the above-captioned petition on January 16, 2019, to confirm an arbitration award against Respondent Upstate Interiors, LLC, (Pet. to Confirm Arb. Award ("Pet."), Docket Entry No. 1; Pet'rs Mem. in Supp. of Pet. to Confirm Arb. Award ("Pet'rs Mem."), Docket Entry No. 4.)  Petitioners allege that Respondent failed to remit required contributions to certain employee benefit plans pursuant to collective bargaining agreements, section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3), and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185.  (Pet. ¶¶ 1, 15, 21.)  On April 29, 2019, after Respondent failed to appear in the action and the deadline to do so had passed, Petitioners requested that the Court deem the Petition an unopposed motion for summary judgment.  (Letter dated Apr. 29, 2019, Docket Entry No. 9.)

For the reasons set forth below, the Court deems the Petition an unopposed motion for summary judgment and grants Petitioners' motion to confirm the arbitration award in the amount of $133,592.18, plus interest accrued from the date of the award through the date of judgment, and awards Petitioners $315 in attorneys' fees and $475 in costs for a total damages award of $134,382.18 plus accrued interest. (*See* Pet. ¶¶ 24, 34–35.)

## I. Background

Petitioners Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship Funds, successors to the Empire State Carpenters Annuity, Apprenticeship, Pension, and Welfare Funds (the "ERISA Funds") are "employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA." (Pet. ¶ 4.) The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). (*Id.*) Petitioners Trustees of the Northeast Carpenters Labor Management Cooperation Fund, successor to the Empire State Carpenters Labor Management Cooperation Fund (the "Labor Management Fund") are "employer and employee trustees of a labor management cooperation committee established under section 302(c)(9) of the LMRA, 29 U.S.C. § 186([c])(9)." (*Id.* ¶ 5.) Respondent is a corporation and was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. (*Id.* ¶ 6.)

In or about March of 2011, Respondent agreed to extend its existing collective bargaining agreement with the New England Regional Council of Carpenters (the "Union") by entering into a compliance form agreement ("2011 Compliance Form"). (*Id.* ¶¶ 1, 8; 2011 Compliance Form, annexed to Pet. as Ex. A, Docket Entry No. 1-1.) Pursuant to the 2011 Compliance Form,

2

Respondent agreed to be bound to the June 1, 2011 through May 31, 2016 Northwest Region Agreement ("2011-16 CBA") between various employer associations ("Associations") and the Union. (Pet. ¶ 8; 2011-16 CBA, annexed to Pet. as Ex. B, Docket Entry No. 1-2.) In or about July of 2016, Respondent agreed to be bound to the subsequent agreement entered into between the Associations and the Union, the June 1, 2016 through May 31, 2021 Northwest Region Agreement ("2016-21 CBA"). (Pet. ¶¶ 9–10; 2016 Mem. of Understanding, annexed to Pet. as Ex. C, Docket Entry No. 1-3; 2016-21 CBA, annexed to Pet. as Ex. D, Docket Entry No. 1-4.)

The 2011-16 CBA and the 2016-21 CBA (collectively, the "CBAs") require Respondent . . . to make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union," (Pet. ¶ 11 (first citing 2011-16 CBA art. 16, § 1; and then citing 2016-21 CBA art. 17, § 1)), and "to submit to audits deemed necessary by the Funds to 'determine whether and to what extent the Employer has made the contributions specified' by the CBAs," (*id.* ¶ 13 (quoting 2011-16 CBA art. 16, § 6 and 2016-21 CBA art. 17, § 6)). The CBAs provide that "[t]he Employer shall be bound by and shall comply with the Trust Agreements, plans and/or rules, policies and regulations of the applicable Funds, including the Funds' Joint Policy for the Collection of Delinquent Contributions ('Collection Policy[]')." (*Id.* ¶ 12 (alteration in original) (quoting 2011-16 CBA art. 16, § 3 and 2016-21 CBA art. 17, § 3); Collection Policy, annexed to Pet. as Ex. E, Docket Entry No. 1-5.) The CBAs further provide that "should [the Employer] become delinquent in any of its obligations to any Fund . . . it shall be liable for such penalties and costs as may be provided for by the Trust Agreement, resolution and Collection Policy of the respective Fund(s), including, but not limited to, interest, liquidated damages, and costs of collection including attorney's and accounting fees." (Pet. ¶ 20 (alteration in original) (quoting 2011-16 CBA art. 16, § 5 and 2016-21 CBA art. 17, § 5).)

"Pursuant to the Collection Policy, Petitioners conducted an audit of Respondent covering the period March 1, 2014 through December 31, 2017," and the auditor determined that "Respondent failed to remit contributions in the amount of $79,365.50." (*Id.* ¶¶ 14–15.) The Collection Policy provides that "in the event an employer fails to remit contributions to the Funds, the matter shall be sent to arbitration before the Funds' designated arbitrator." (*Id.* ¶ 16 (quoting Collection Policy art. 2.3).) The Collection Policy further provides that "the employer shall be liable for all costs incurred in collecting delinquent contributions, including without limitation, audit costs and arbitration fees," (*id.* ¶ 19 (citing Collection Policy art. 6.3)), and that "should [the Employer] become delinquent in any of its obligations to any Fund . . . it shall be liable for such penalties and costs as may be provided for by the Trust Agreement, resolution and Collection Policy of the respective Fund(s), including, but not limited to, interest, liquidated damages, and costs of collection including attorney's and accounting fees," (*id.* ¶ 20 (alteration in original) (quoting 2011-16 CBA art. 16, § 5 and 2016-21 CBA art. 17, § 5)).

"Pursuant to the Collection Policy, Petitioners initiated arbitration before the designated arbitrator, J.J. Pierson, [Esq]." (*Id.* ¶ 22.) Petitioners provided notice to Respondent "by mailing a Notice of Intent to Arbitrate Delinquency . . . by Certified Mail and regular mail." (*Id.*; Notice of Intent, annexed to Pet. as Ex. F, Docket Entry No. 1-6.) On June 11, 2018, the arbitrator held a hearing and rendered his award in writing (the "Award"), (Pet. ¶ 23; Award, annexed to Pet. as Ex. G, Docket Entry No. 1-7), determining that "Respondent, by failing to pay the contributions uncovered in the audit, was in violation of the terms of the CBAs," (Pet. ¶ 24). "The arbitrator ordered Respondent to pay . . . the sum of $133,592.18, consisting of the principal deficiency of $79,365.50, interest thereon of $30,778.58, liquidated damages of $15,873.10, audit fees of

$5,875, attorneys' fees of $900, and the arbitrator's fee of $800 pursuant to the CBAs." (*Id.*) To date, "Respondent has failed to abide by the Award." (*Id.* ¶ 25.)

Petitioners timely petitioned the Court to (1) confirm the arbitrator's award and award Petitioners $133,592.18 plus interest from the date of the arbitrator's award through the date of judgment and (2) award Petitioners $315 in attorneys' fees and $475 in costs arising out of this action. (*Id.* ¶¶ 24, 34–35.)

## II. Discussion

### a. Standard of review

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). The Second Circuit has held that Rule 55 does not provide the appropriate mechanism for considering a petition to confirm an arbitration award, particularly where the non-appearing party appeared in the underlying arbitration proceeding. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107–08, 109 (2d Cir. 2006) ("Rule 55 does not operate well in the context of a motion to confirm or vacate an arbitration award."); *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite Here! v. Jung Sun Laundry Grp. Corp.*, No. 08-CV-2771, 2009 WL 704723, at *3–4 (E.D.N.Y. Mar. 16, 2009) ("The Second Circuit has held that default judgments are generally inappropriate in proceedings to confirm an arbitration award.").

When a motion to confirm an arbitration award is accompanied by a record, "the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions." *D.H. Blair & Co.*, 462 F.3d at 109. Where a motion for

5

summary judgment is unopposed, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). "In doing so, the court may rely on other evidence in the record even if uncited." *Id.* (citing Fed. R. Civ. P. 56(c)(3)).

Although a summary judgment standard is applied to arbitration confirmation proceedings, "[a] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential — indeed, among the most deferential in the law." *A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 868 (2d Cir. 2020) (per curiam) (quoting *N.Y.C. & Vicinity Dist. Council of the United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus.*, 826 F.3d 611, 618 (2d Cir. 2016)). "[C]onfirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair & Co.*, 462 F.3d at 110 (first quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); and then quoting 9 U.S.C. § 9); *see also Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, & Training Program Fund v. A.J.S. Project Mgmt., Inc.*, No. 19-CV-711, 2020 WL 6546212, at *2 (S.D.N.Y. Nov. 6, 2020) (quoting *D.H. Blair & Co.*, 462 F.3d at 109). "The arbitrator's rationale for an award need not be explained, . . . [o]nly 'a barely colorable justification for the outcome reached' by the arbitrators

is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp. v. Loc. 32B–32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)). Accordingly, "courts 'play only a limited role when asked to review the decision of an arbitrator.'" *Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)).

### b. The Court confirms the arbitration award

Petitioners argue that the Court should confirm the arbitration award because (1) Respondent is bound to the CBAs with the Union, which "binds Respondent to the Collection Policy"; (2) Respondent failed to remit contributions uncovered by the audit, "thereby authorizing the Funds to initiate arbitration"; and (3) "the independent arbitrator acted within the scope of his authority in issuing the arbitration award" in the amount of $133,592.18. (Pet'rs Mem. 4.) Petitioners assert that "the arbitrator [properly] ordered Respondent to pay the Funds $133,592.18, consisting of the principal deficiency of $79,365.50, interest thereon of $30,778.58, liquidated damages of $15,873.10, audit fees of $5,875, attorneys' fees of $900, and the arbitrator's fee of $800," pursuant to the CBAs and the Collection Policy. (*Id.*) Further, Petitioners note that the arbitration award "has not been vacated, modified, or corrected." (*Id.*)

Because Petitioners' motion to confirm the arbitration award is accompanied by the CBAs, the Collection Policy, the Notice of Intent to Arbitrate, and the arbitrator's award, there is sufficient record for the Court to review Petitioners' application as an unopposed motion for summary judgment. *See Trs. of the NYC Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Bilt NYG, Inc.*, No. 20-CV-3846, 2020 WL 7211184, at *3 (S.D.N.Y. Nov. 19, 2020) (treating the petition as an unopposed motion for summary judgment where the petitioners "submitted

7

undisputed evidence showing that the arbitrator was acting within the scope of his authority, and that the arbitration award was appropriate in this case"), *report and recommendation adopted*, 2020 WL 7183549 (S.D.N.Y. Dec. 7, 2020).

The arbitration award has, at a minimum, "a barely colorable justification." *D.H. Blair & Co.*, 462 F.3d at 110. Respondent failed to appear at the arbitration hearing. Thus, Respondent did not contest the amounts owed or submit evidence rebutting Petitioner's documents, and the arbitrator's decision addressed the issues presented. (Award 1); *see Langford v. Beck*, No. 20-CV-4980, 2020 WL 6292637, at *2 (S.D.N.Y. Oct. 27, 2020) (confirming award where there was "no genuine dispute as to any material fact" based on the materials submitted (quoting Fed. R. Civ. P. 56(a))); *Trs. of the Dist. Council No. 9 Painting Indus. Ins. Fund v. Sahara Constr. Corp.*, No. 20-CV-4501, 2020 WL 6130673, at *3 (S.D.N.Y. Oct. 16, 2020) (confirming arbitration award where the violations stemmed from a collective bargaining agreement and the respondent failed to refute the petitioner's reports during the arbitration hearing).

In addition, the CBAs and Collection Policy provide for the remedies awarded by the arbitrator. (Pet. ¶¶ 19–20; Award 6–9); *see Bilt NYG, Inc.*, 2020 WL 7211184, at *3 (confirming arbitration award where "the amount and categories of damages awarded by the arbitrator correspond generally to those contemplated in the [collective bargaining agreement] and employer contribution policy — including principal and liquidated damages, interest, and [attorneys'] fees and costs"). The arbitrator's award reflects a considered judgment and there is no genuine dispute of material fact.

For the reasons stated above, the Court grants Petitioners' motion to confirm the arbitration award in the amount of $133,592.18, plus interest accrued until entry of judgment. *See Latronica v. Loc. 1430 Int'l Bhd. of Elec. Workers Pension Fund*, 820 F. App'x 12, 14 (2d

Cir. 2020) (affirming district court's grant of prejudgment interest in ERISA case); *Annuity , Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Loc. 15, 15A, 15C & 15D v. Intercounty Paving Assocs. of N.Y., LLC*, No. 19-CV-733, 2020 WL 6826197, at *5 (E.D.N.Y. Nov. 20, 2020) (awarding prejudgment interest on unpaid ERISA and non-ERISA contributions); *A.J.S. Project Mgmt., Inc.*, 2020 WL 6546212, at *8 (awarding prejudgment interest in ERISA case).

c. **Attorneys' fees**

Petitioners request $315 in attorneys' fees. (Pet'rs Mem. 6; Pet. ¶ 33.) Petitioners assert that they are "entitled to attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g)" and that their requested fees are reasonable. (Pet'rs Mem. 5.) In support, Petitioners argue that their counsel billed "for the services of associate attorneys at the rate of $225 per hour," a rate that was "negotiated with a Board of Trustees consisting of members with long business and negotiation experience and [which], as such, should be viewed as [a] rate[] that a reasonable client would pay." (*Id.* at 6.) Petitioners also contend that this rate is "within the reasonable range for attorneys representing ERISA benefit funds within the Southern and Eastern Districts of New York." (*Id.*)

A district court must award attorneys' fees and costs in a successful ERISA action that results in judgment in favor of the plan. *See* 29 U.S.C. § 1132(g)(2)(D); *Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 225, 226 (2d Cir. 2004) ("[When] the ERISA plan receives a judgment in its favor . . . the statute renders fees and costs mandatory: 'the court shall award the plan' reasonable fees and costs." (quoting 29 U.S.C. § 1132(g)(2))). In deciding what fees are due to a petitioner's attorney, courts must consider "what a reasonable client would be willing to pay to determine the 'presumptively reasonable fee.'" *Trs. of Loc. 813 Ins. Tr. Fund v. Bradley*

9

*Funeral Serv., Inc.*, No. 11-CV-2885, 2012 WL 3871759, at *5 (E.D.N.Y. Aug. 10, 2012) (quoting *Masino v. Columbus Constr. Corp.*, No. 08-CV-1592, 2009 WL 2566956, at *6 (E.D.N.Y. Aug. 19, 2009)), *report and recommendation adopted*, 2012 WL 3871755 (E.D.N.Y. Sept. 4, 2012); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2007), *as amended*, 522 F.3d 182 (2d Cir. 2008). To calculate the amount of a "presumptively reasonable fee," the court multiplies a reasonable hourly rate by the number of hours reasonably expended on the matter. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (explaining the "substance of" the traditional lodestar approach and a twelve-factor "reasonableness" approach to determining fees, which informed the "presumptively reasonable fee" test). When determining whether the presumptively reasonable fee is ultimately reasonable, a court must "bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney[s'] fees."[1] *Id.*

---

[1] The Second Circuit has identified a number of variables to guide the inquiry as to what constitutes a reasonable fee, including:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Finkel v. Rico Elec., Inc.*, No. 11-CV-4232, 2012 WL 6569779, at *12–14 (E.D.N.Y. Oct. 1, 2012), *report and recommendation adopted*, 2012 WL 6561270 (E.D.N.Y. Dec. 17, 2012) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 186 n.3). In addition, courts are also instructed to evaluate "the complexity and difficulty of the case," the availability and expertise of the client's other counsel, the resources necessary to effectively litigate the case, "the timing demands of the case," the attorney's interest in achieving the ends of the litigation, whether the attorney may have initially acted *pro bono*, and other returns the attorney may expect from representation. *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at

(quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 493 F.3d at 117). In what has become known as the "forum rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See id.* at 174–76 (discussing forum rule); *see also Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011); *Ret. Fund of Loc. 1482 Paint & Allied Prod. Mfrs. v. N. Adhesives, Inc.*, No. 19-CV-5609, 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020) (collecting cases and stating that "reasonable rates for the Eastern District rang[e] from $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, $100 to $200 per hour for junior associates, and $70 to $100 per hour for paralegals"), *report and recommendation adopted*, 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020).

In reviewing a fee application, courts may review the expenditure of hours submitted by counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case. *See Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672, 2013 WL 5502951, at *7 (E.D.N.Y. Aug. 26, 2013), *report and recommendation adopted*, 2013 WL 5502950 (E.D.N.Y. Sept. 30, 2013) (affirming reduced award of attorneys' fees where the petitioner submitted a sworn declaration from counsel in support). To obtain an award of attorneys' fees, a petitioner must provide contemporaneous time records that support the date work was performed, the nature of the hours expended, and the work done. *See Scott v. City of New York*, 643 F.3d 56,

---

184. While the traditional "lodestar" method, which does not consider the above factors, has "achieved dominance in the federal courts," courts in this Circuit continue to take the *Arbor Hill* factors into consideration when determining what constitutes a reasonable fee. *Finkel*, 2012 WL 6569779, at *13 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550–51 (2010)). The Court notes that determining the "presumptively reasonable fee" and adjusting it based on the above factors produces the same result as applying the traditional "lodestar" analysis in this case.

58–59 (2d Cir. 2011) ("[A] district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records."); *Pilitz v. Inc. Village of Freeport*, No. 07-CV-4078, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (noting that "the party seeking [attorneys'] fees [must] submit sufficient evidence to support the hours worked and the rates claimed" and "must support its application by providing contemporaneous time records that detail 'for each attorney, the date, the hours expended, and the nature of the work done'" (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983))).

Under the CBAs, the Collection Policy, and 29 U.S.C. § 1132(g)(2), Petitioners are entitled to reasonable attorneys' fees and costs in a court action to recover delinquent contributions. (Pet. ¶ 28; Pet'rs Mem. 6–7); *see also Sahara Constr. Corp.*, 2020 WL 6130673, at *3 (granting attorneys' fees pursuant to a clause in a collective bargaining agreement). The Collection Policy specifies that "all costs (including, but not limited to, attorneys' . . . fees) incurred . . . to determine, discover and collect delinquent Contributions . . . shall be due to the [Petitioners] from the delinquent [Respondent], including . . . filing fees, arbitrator's fees, [and] fees for service of process." (Collection Policy art. 6.3); *see also Sahara Constr. Corp.*, 2020 WL 6130673, at *3 ("[The respondent] signed the [collective bargaining agreement] . . . , failed to satisfy the [a]ward and failed to oppose the [p]etition. As [the respondent] failed to justify its refusal to abide by the arbitrator's decision, [the] [p]etitioners should be awarded reasonable attorneys' fees and costs.").

Petitioners' request for attorneys' fees is supported by contemporaneous time records specifying "all time spent and all activities performed in the prosecution of this matter by its attorneys and staff." (Pet. ¶ 29; Time Records, annexed to Pet. as Ex. H, Docket Entry No. 1-8);

*see also Carey*, 711 F.2d at 1147–48; *Intercounty Paving Assocs. of N.Y., LLC*, 2020 WL 6826197, at *7 (awarding attorneys' fees where the plaintiffs "submitted an affidavit from their counsel and contemporaneous time records detailing counsel's work on the case, the date on which the work occurred, and the number of hours expended on such work").

The records reflect 1.4 hours of work, which the Court finds to be reasonable in view of the documentation Petitioners have provided to support the unopposed motion for summary judgment. (Pet. ¶ 33; Time Records); *see Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Excel Installations, LLC*, No. 19-CV-3012, 2020 WL 429135, at *5 (E.D.N.Y. Jan. 27, 2020) (finding 5.9 hours billed to be reasonable in a motion to confirm ERISA arbitration award); *Finkel*, 2019 WL 3281012, at *2–3 (finding 1.7 hours to be "a reasonable amount of time to have spent in preparation of the petition" to enforce arbitration award).

The records also reflect an hourly rate of $225 for an associate attorney.[2] (Pet. ¶ 30–31; Hours Expended by Counsel.) The requested hourly rate of $225 is consistent with the prevailing rate within this district for associates. *See Trs. of Bldg. Trades Educ. Ben. Fund v. Culver Elec., LLC*, No. 17-CV-3448, 2020 WL 6927618, at *7 (E.D.N.Y. Nov. 3, 2020), *report and recommendation adopted in part*, 2020 WL 6902364 (E.D.N.Y. Nov. 24, 2020) (finding $200 per hour reasonable for associate attorney in ERISA litigation); *Excel Installations, LLC*, 2020 WL 429135, at *5 (reducing first-year associate's rate from $225 to $175 per hour); *Trs. of Leather Goods, Handbags, & Novelty Workers' Union Loc. 1 Joint Ret. Fund v. Cent. Fur*

---

[2] Although Petitioners state that "[the law firm] billed the legal assistants' time at a rate of $100 per hour for work performed in connection with this action," Petitioners do not state how much time was billed or request any fees for legal-assistant work, and the contemporaneous time records submitted do not reflect any legal-assistant work. (*See* Pet. ¶ 31; Time Records.)

*Storage Co.*, No. 18-CV-7224, 2019 WL 3937132, at *11–12 (E.D.N.Y. Aug. 2, 2019) (awarding $250 per hour for senior associate attorney in ERISA matter), *adopted by* 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019); *Div. 1181 Amalgamated Transit Union—N.Y. Emps.' Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 621–23 (E.D.N.Y. 2017) (finding $200 per hour reasonable for associate attorney in ERISA matter).

Petitioners' counsel, Marimon, is an associate at her law firm and has "handled the prosecution of several ERISA collections actions" since 2014. (Pet. ¶ 30.) Marimon has been awarded a rate of $250 per hour for her associate-level work in such actions.[3] *See Matter of Arb. Between Finkel & Allstate Elec. Corp.*, No. 18-CV-3798, 2020 WL 1864877, at *4 (E.D.N.Y. Apr. 14, 2020) (reducing same attorney's rate from $275 to $250 per hour for her work as an associate); *Trs. of Pavers & Road Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Genrus Corp.*, No. 18-CV-4232, 2019 WL 4604972, at *8 (E.D.N.Y. Sept. 6, 2019) (awarding same attorney $250 per hour for work as an associate), *report and recommendation adopted*, 2019 WL 4602880 (E.D.N.Y. Sept. 23, 2019); *Finkel v. IAG Elec., Inc.*, No. 19-CV-3075, 2019 WL 3281012, at *2–3 (E.D.N.Y. July 19, 2019) (reducing same attorney's hourly rate from requested $350 to $250); *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship & Labor Mgmt. Coop. Funds v. CEI Contractors, Inc.*, No. 18-CV-3467, 2019 WL 117603, at *6 (E.D.N.Y. Jan. 7, 2019) (reducing same attorney's hourly rate from $225 to $200 despite her assertion that she had graduated four years earlier and had "handled the prosecution of numerous ERISA collection[] actions"); *Trs. of Loc. 7 Tile*

---

[3] Nicole Marimon, Petitioners' counsel in this case, served as the petitioner's counsel in *Finkel v. Lintech Elec., Inc.*, No. 18-CV-6865, 2021 WL 25354 (E.D.N.Y. Jan. 4, 2021), a recent case before this Court wherein the petitioner requested a rate of $275 per hour for associate-level attorneys' fees and the Court reduced the rate to $250 per hour.

*Indus. Welfare Fund v. Larsen Marble & Tile, LLC*, No. 18-CV-1025, 2018 WL 6363923, at *6 (E.D.N.Y. Nov. 19, 2018), *report and recommendation adopted as modified*, 2018 WL 6344188 (E.D.N.Y. Dec. 5, 2018) (reducing the hourly rate for the same attorney from $265 to $200 four years after her law school graduation). *But see Excel Installations, LLC*, 2020 WL 429135, at *5 (awarding same attorney $300 per hour "given her position as *partner* and as the most senior attorney on the case"). Thus, the Court awards Petitioners attorneys' fees based on the requested hourly rate of $225 per hour for Marimon's work.

Accordingly, the Court grants Petitioners' request for attorneys' fees and awards Petitioners $315 in attorneys' fees.

### d. Costs

Petitioner requests "$475 in costs arising from the service fee and filing fees" and asserts that this amount is reasonable. (Pet'rs Mem. 7; Pet. ¶ 34.)

The Court takes judicial notice of this district's $400 fee to file a petition and awards such to Petitioners. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (noting that courts award "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients" (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989))); *Resnik v. Coulson*, No. 17-CV-676, 2020 WL 5802362, at *11 (E.D.N.Y. Sept. 28, 2020) (awarding complaint filing fee and fee for leave to appear *pro hac vice* based on judicial notice); *Graduation Sols., LLC v. Acadima, LLC*, No. 17-CV-1342, 2020 WL 1528082, at *4 (D. Conn. Mar. 30, 2020) ("'Costs relating to filing fees, process servers, postage and photocopying are ordinarily recoverable' if they are supported by documentation." (quoting *Teamsters Loc. 814 Welfare Fund v. Dahill Moving 7 Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008))).

15

Although Petitioners do not provide receipts to substantiate their request for service fees of $75, the Court finds that such amount is reasonable. *See Culver Elec., LLC*, 2020 WL 6927618, at *7 (awarding "$400.00 for a filing fee and $77.75 for a process server fee" in ERISA action); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D v. Ne. Indus. Maint., Inc.*, No. 19-CV-4484, 2020 WL 6437400, at *11 (E.D.N.Y. Sept. 28, 2020) (awarding "costs of $400 in court filing fees and $60 in service of process fees" in ERISA action); *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers, Loc. 14-14B v. Superior Site Work, Inc.*, No. 15-CV-543, 2017 WL 639248, at *6–8 (E.D.N.Y. Feb. 16, 2017) (awarding $400.00 for filing fee and $95.00 for service of process).

Accordingly, the Court grants Petitioners' request for costs in the amount of $475.

### III. Conclusion

For the foregoing reasons, the Court grants Petitioners' motion to confirm the arbitration award in the amount of $133,592.18, plus interest accrued until entry of judgment, and awards Petitioners $315 in attorneys' fees and $475 in costs for a total damages award of $134,382.18 plus accrued interest. The Court directs Petitioners to mail a copy of this Memorandum and Order to Respondent and directs the Clerk of Court to close the case.

Dated: June 23, 2021
      Brooklyn, New York

                        SO ORDERED:

                          s/ MKB

                        MARGO K. BRODIE
                        United States District Judge